[No. 9743.  Department One.  December 26, 1911.]

ANNA E. MULLINS, *Respondent*, v. PATRICK MULLINS *et al.*, *Appellants.*[1]

HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—ACTIONS—ACCRUAL—LIMITATIONS.  An action for alienation of affections of a husband is not commenced within three years from the time of the accrual of the action, and is therefore barred, where the plaintiff separated from her husband more than three years before the action was commenced, and anything said or done by the defendants to alienate the husband's affections occurred prior to that time.

Appeal from a judgment of the superior court for Yakima county, Preble J., entered November 1, 1910, upon the verdict of a jury rendered in favor of the plaintiff in an action for alienation of affections, after a trial on the merits.  Reversed.

*Englehart & Rigg*, for appellants.

*Wende & Taylor* and *Charles A. Riddle*, for respondent.

[1]Reported in 119 Pac. 830.

Mount, J.—The plaintiff brought this action against the defendants to recover damages on account of alleged alienation of the affections and loss of consortium of her husband.  She recovered a judgment in the court below, and the defendants have appealed.

At the trial of the case, defendants moved the court for a nonsuit at the close of the plaintiff's evidence, and again at the close of all the evidence moved for a directed verdict. These motions were denied.  A number of errors are assigned, but our view upon the question hereinafter noticed is conclusive of the case, and we shall therefore not notice the other questions presented.

It is argued by the appellants that the action was barred by the two-year statute of limitations; but, if the three-year statute applies to a case of this kind, that the evidence conclusively shows that the action was not begun within three years after the cause accrued.  The respondent concedes that the action was not begun within two years, but it is claimed that the action did not accrue until February 2, 1907, and was therefore well within the three-year statute, which applies to this case.  It is not necessary to decide which statute applies, for we are clear that the action was not commenced until after the expiration of three years from the time it accrued.

The plaintiff and John R. Mullins were married in Butte, Montana, on November 28, 1905.  John R. Mullins was the son of the defendants.  After the marriage, and on April 10, 1906, the plaintiff and her husband came from Butte to North Yakima, to make their home with the defendants.  The plaintiff at that time was pregnant.  They lived with the defendants at their home until some time in June, 1906, when the two families moved into a new hotel constructed and owned by the defendants.  The son, John R., was employed in the management of the hotel.  In August, 1906, the plaintiff's mother, who then lived in St. Paul, Minnesota, was invited by the plaintiff and her husband to come

to North Yakima to take care of her daughter during child-
birth and confinement.  She arrived on August 18, 1906.
A child was born to the plaintiff in September.  After the
arrival of the plaintiff's mother at Yakima, the families
were not harmonious.  It is also apparent that prior to that
time the relations were not altogether harmonious between
the two Mullins families; for the plaintiff testified that her
mother-in-law had frequently said to plaintiff's husband that
plaintiff "was only a common working girl, not good enough
for Johnny; was not in his class, and they would never live
together if she could help it," and such like expressions.

After the baby came, and some time in October, 1906,
plaintiff and Mrs. Mullins, her mother-in-law, had some diffi-
culty, and plaintiff slapped Mrs. Mullins in the face.  There-
upon the defendant Patrick Mullins told plaintiff she would
have to go.  She thereupon had her clothes packed and she
and her mother, on November 3, 1906, left for St. Paul.
The plaintiff and her husband had not gotten along well
prior to this time, and she had refused to live with him.
Plaintiff's husband, however, did not want her to go to St.
Paul.  After the plaintiff had gone to St. Paul, she and her
husband corresponded.  In February she sent her husband
a telegram, stating that the baby was sick and for him to
come.  He started immediately, but did not reach St. Paul
until after the baby died.  On the day of the funeral, plain-
tiff and her husband consorted together and the next day,
which was February 21, 1907, plaintiff's husband endeavored
to effect a reconciliation with her.  She testified that he
cursed her and abused her and she refused to live with him as
his wife.  It was then agreed that he return to this state and
procure a divorce.  He returned but did not seek a divorce.
Later, in the month of April, 1907, she came to this state
and brought an action for divorce upon the ground of cruelty.
Her husband resisted the divorce, which was granted on

12—66 WASH.

May 16, 1908.    She thereafter, on October 30, 1909, brought this action.

It is apparent from the evidence of the plaintiff in this case that, whatever the defendants said or did to alienate the affection of plaintiff's husband was said and done prior to October 30, 1906, and it is also apparent that, if her husband ceased to love and consort with her, he ceased to do so many days prior to October 30, 1906. The evidence is clear that the last thing that defendants or either of them said or did to separate the plaintiff and her husband was about October 15, 1906, when they ordered the plaintiff to leave the premises. It is apparently not claimed, and could not well be claimed from the evidence, that defendants did anything after that time, for the separation was then complete. But plaintiff contends that because her husband came to St. Paul on or about February 20, 1907, and consorted with her for one day, the statute did not begin to run until that time. But her testimony is clear to the point that she then refused to live with her husband who solicited her to do so. If the conduct of his parents had previously incited him against her so that he was cruel to her and abused her so that she could no longer endure him, there is no evidence to show that they did anything new at that time. Whatever they did was done previously to that time; and if she lost the affection or consortium of her husband, it was lost prior to that time and she knew it. If she had then gone to live with the husband, and in good faith had endeavored to regain his affection, and if the defendants thereafter had incited him against her, no doubt the cause of action would begin to run from the last wrongful act of the defendants. But that state of facts did not occur. The plaintiff's husband sought her to live with him, but she refused, and they then agreed to be divorced—not on account of what occurred there, but of what had previously taken place. The wrong of the defendants, if any, was committed more than three years prior

to the time the action was begun, and was, during all that
time, within the knowledge of the plaintiff.

The trial court for this reason should have sustained the
motion for nonsuit made by the defendants. The judgment
is reversed and the cause ordered dismissed.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.